**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO.** |
| **v.** | **:** | **VIOLATIONS:** |
| | | **18 U.S.C. § 1349 (conspiracy to commit mail** |
| **TAKANDRYIA LATRICE CAGE** | **:** | **fraud – 1 count)** |
| | | **18 U.S.C. § 1344 (bank fraud – 1 count)** |
| | **:** | **18 U.S.C. § 1343 (wire fraud – 3 counts)** |
| | **:** | **Notice of Forfeiture** |

**I N F O R M A T I O N**

**COUNT ONE**

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this Information:

1.      Cisco Systems, Inc. ("Cisco") was a corporation based in San Jose, California specializing in providing internet networking hardware and software for business, government, and individuals. Cisco's core development areas were in switching and routing, which enabled Cisco customers to communicate through the use of the World Wide Web.

2.      Cisco manufactured, sold, and supported computer networking equipment on a global scale.  Cisco supported its products through two means: (a) a Limited Lifetime Hardware Warranty Program and Enhanced Limited Lifetime Warranty Program offered with Cisco hardware and software (hereinafter a "Cisco Warranty"); and (b) a more comprehensive suite of support offered to customers for a fee (called and referred to by Cisco as "SMARTnet" Service).

3.      The Cisco Warranty and SMARTnet Service were not transferrable. That means that any purchase of used or secondary-market Cisco equipment was not covered by the Cisco Warranty or SMARTnet Service even if it was purchased through a Cisco channel partner or distributor. Before used or secondary-market equipment could be placed under a new support contract, the requester was required to show proof of a valid software license or pay relicensing fees and must have had the equipment inspected to confirm that it was in proper working order and had been maintained appropriately.

4.      When a customer needed technical assistance on a device that was under Warranty or SMARTnet service, the customer could open a Cisco service request ("SR") and report its problem to Cisco in one of the following ways: by telephone, email, or through Cisco's website (www.cisco.com).

5.      Cisco maintained Technical Assistance Centers ("TAC") worldwide to process these requests for service. All requests for service generated an SR number, which was used to track the reported problem until it was resolved. Upon creation of the SR, information about the customer was captured as well as the specific product complaint. Once initiated, the SR was sent to a Cisco TAC engineer for problem diagnosis and resolution. The TAC engineer would determine if the customer was entitled to a replacement product under the terms of Cisco's Limited Warranty Program or SMARTnet service.

6.      If the customer was entitled to a replacement product, TAC would generate a Return Material Authorization ("RMA") reference number, initiating the process to deliver a replacement product to the customer. Under Cisco's Warranty and SMARTnet Service Programs, customers could be entitled to advance replacement, meaning that Cisco or one of its service centers would ship a replacement product to the customer before the customer sent back

the faulty part, with the understanding that the faulty part would subsequently be returned to Cisco upon receipt by the customer of the replacement part. Cisco notified customers who received advance replacement that they must return the defective product.

7. Most Cisco warranty replacement products were shipped by Cisco via commercial interstate carrier Federal Express ("FedEx") from a Cisco warehouse in either Roanoke, Texas, or Columbus, Ohio.

8. Gulfstream Data, LLC ("Gulfstream Data") of Lenoir City, Tennessee, was a limited liability company engaged in the reselling of new, used, and refurbished computer hardware and networking equipment manufactured by Cisco and other companies. Gulfstream purchased Cisco and other computer networking hardware from individuals and companies, and resold the hardware. Upon purchasing hardware, Gulfstream Data issued a purchase order ("P.O.") number to track and reflect the purchase.

9. PayPal Holdings Inc. ("PayPal") was a corporation with its headquarters in San Jose, California, engaged in the business of operating a worldwide online payment system that supports online money transfers and serves as an electronic alternative to traditional paper methods of making payment for goods and services. PayPal operated as a payment processor for online vendors and auction sites. Individuals and businesses established PayPal accounts that they could use to make and receive money transfers, including for the purchase or sale of merchandise or services. These PayPal accounts were typically linked to bank accounts at financial institutions from which and into which the PayPal customers could transfer funds.

10. eBay Inc. ("eBay") was a corporation with its headquarters in San Jose, California, engaged in the business of electronic commerce. eBay facilitated consumer-to-consumer and business-to-consumer sales through its website. Individuals and businesses sold

products through eBay by posting the items to be sold on eBay's website and offering the items for sale in either an auction format, a fixed price format, a best offer format, or a combination of these formats. Sellers could also create eBay "stores" on the eBay website that would allow the sellers to advertise all of the items they were selling through the eBay website. Purchasers typically paid for the items they bought on eBay using PayPal.

11.    Defendant TAKANDRYIA LATRICE CAGE maintained a PayPal account ending in 3089.

12.    Co-conspirator Jerel Andre Williams, charged separately, maintained an eBay account that was linked to defendant TAKANDRYIA LATRICE CAGE's PayPal account ending in 3089.

## THE CONSPIRACY

13.    Beginning in or about July 2016 and continuing until in or about January 2018, within the Eastern District of Pennsylvania, the District of Delaware, the Northern District of Texas, the Western District of Texas, the District of Nevada, the Southern District of California, and elsewhere, defendant

## TAKANDRYIA LATRICE CAGE

conspired and agreed with Jerel Andre Williams to commit offenses against the United States, that is, to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme knowingly cause to be delivered by mail and commercial interstate carriers, according to the directions thereon, mail matter in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1341.

4

**MANNER AND MEANS**

It was part of the conspiracy that:

14.     Co-conspirator Jerel Andre Williams, charged separately, registered false domain names, including the false domain name "alphateamcomp.org."

15.     Co-conspirator Jerel Andre Williams established new email addresses using false identities, some of which were established using the false domain names, in order to hide his true identity and mislead Cisco into believing that the email addresses were associated with other persons who worked for legitimate companies.

16.     Co-conspirator Jerel Andre Williams obtained and ascertained serial numbers for Cisco computer hardware that neither he nor defendant TAKANDRIYA LATRICE CAGE owned or possessed.

17.     Co-conspirator Jerel Andre Williams taught defendant TAKANDRYIA LATRICE CAGE how to establish new email addresses, use false identities and obtain serial numbers for Cisco computer hardware that neither she nor co-conspirator Williams owned or possessed.

18.     Defendant TAKANDRYIA LATRICE CAGE obtained cellular phones (referred to as "burner phones") that were paired to false names to use to contact Cisco to initiate and complete false warranty claims.

19.     Defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams contacted Cisco via telephone using burner phones, via email, and via online chats and initiated false warranty claims by providing legitimate serial numbers for Cisco products that they did not own or possess, as well as false names, new email addresses they had created, false shipping addresses, and other false information, and by falsely claiming that they

5

and/or the companies they claimed to work for were the owners of the items in question and that the items were not working properly.

20.     Defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams provided customer service representatives for Cisco with descriptions of the supposed problems with the items that they claimed were broken that co-conspirator Williams knew would prevent the customer service representatives from solving the problems through troubleshooting and would necessarily require the replacement of the supposedly faulty items.

21.     Defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams provided Cisco with addresses at which the fraudulently-obtained replacement merchandise could be shipped, and caused Cisco to ship via FedEx the computer hardware from Cisco warehouses to addresses provided by defendant CAGE and co-conspirator Williams.

22.     Defendant TAKANDRYIA LATRICE CAGE personally initiated approximately 50 false Cisco warranty claims, and assisted co-conspirator Jerel Andre Williams in initiating others.

23.     Through the submission of false warranty claims and various false statements, defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams caused Cisco to ship in interstate commerce via commercial interstate carrier at least approximately 157 warranty replacement products to which they had no legitimate right, each with a retail value of between approximately $3,693 and approximately $34,500, to addresses throughout the United States, including addresses in Wynnewood, Pennsylvania, Cherry Hill, New Jersey, Wilmington, Delaware, Las Vegas, Nevada, Henderson, Nevada, La Jolla, California, San Diego, California, Arlington, Texas, Dallas, Texas, and Fort Worth, Texas.

6

24. Defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams tracked the shipments using the FedEx tracking number provided by Cisco, and often contacted FedEx to change the delivery address to a FedEx store location nearby the false company address previously provided by defendant CAGE and co-conspirator Williams.

25. Defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams traveled to the locations, including FedEx store locations, to which they had instructed Cisco and/or FedEx to deliver the replacement hardware, in order to pick up the replacement hardware.

26. Defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams falsely promised Cisco that they would send back the supposedly broken Cisco hardware, when in fact they never owned the hardware in question and did not ship back the broken Cisco computer hardware that they had claimed to own.

27. Co-conspirator Jerel Andre Williams arranged to sell the fraudulently-obtained Cisco computer hardware to computer resellers, often arranging the sale before submitting a false warranty claim to Cisco, by falsely representing to the computer resellers that he already had a particular model of Cisco computer hardware on hand, without disclosing to the computer resellers that he did not own or possess the item and instead intended to obtain the computer hardware by fraud. Upon arranging for the sales to computer resellers, co-conspirator Williams caused the computer resellers to issue Purchase Order ("P.O.") numbers. If co-conspirator Williams did not yet possess the items he had agreed to sell as reflected on the P.O. numbers, co-conspirator Williams submitted false warranty claims to Cisco to obtain the particular models of computer hardware in question. Then, after obtaining the hardware by fraud

7

from Cisco, co-conspirator Williams notified the computer resellers of the serial numbers of the hardware, and the serial numbers were added to the reseller's P.O. number.

28.     Co-conspirator Jerel Andre Williams sold most of the fraudulently-obtained Cisco computer hardware that he obtained during and in furtherance of this scheme to Gulfstream Data, without disclosing that it had been obtained from Cisco through the submission of false warranty claims. Co-conspirator Williams shipped fraudulently-obtained Cisco hardware to Gulfstream Data via commercial interstate carrier, typically FedEx.

29.     Co-conspirator Jerel Andre Williams compensated defendant TAKANDRYIA LATRICE CAGE for her participation in the scheme by, among other things, giving her cash, taking her on vacations, giving her gifts, and providing her with money in her PayPal account ending in 3089 that co-conspirator Williams had generated through his sale of computer equipment on eBay.

## OVERT ACTS

In furtherance of the conspiracy, and to achieve its objects, defendant TAKANDRYIA LATRICE CAGE and co-conspirator Jerel Andre Williams committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.     On or about December 12, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "Relo Systems" of San Bernardino, California, and using the false name of "Kieth Morrison" and the email address of "relosys@outlook.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681447437, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-48F-L.

2.      On or about December 12, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "Relo Systems" of San Bernardino, California, and using the false name of "Kieth Morrison" and the email address of "relosys@outlook.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681444624, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-48P-L.

3.      On or about December 12, 2016, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to San Bernardino, California, two pieces of Cisco computer hardware, namely, one new Cisco Model WS-C3850-48F-L, serial number FCW2043C1PJ, with a retail value of approximately $11,400, and one refurbished Cisco Model WS-C3850-48P-L, serial number FOC1949X1PM, with a retail value of approximately $6,240, via FedEx, in response to Cisco SR #s 681447437 and 681444624, respectively.

4.      On or about December 12, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "Smart Tops" of Menifee, California, and using the false name of "Johnathan Ghram" and the email address of "smarttop1@aol.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681444396, seeking the replacement of two supposedly faulty pieces of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3650-48FD-S and a Cisco Model WS-C3650-48FS-S.

5.      On or about December 12, 2016, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to Menifee, California, two pieces of Cisco computer hardware, namely, one new Cisco Model WS-C3650-48FD-S, serial number FDO2042E0J6, with a retail value of approximately $11,900, and one refurbished Cisco Model WS-C3650-

9

48FS-S, serial number FDO1919E4C2, with a retail value of approximately $6,240, via FedEx, in response to Cisco SR # 681444396.

6.     On or about December 13, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "The Hills Group" of San Diego, California, and using the false name of "Terry Hill" and the email address of "thehills.group@aol.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681458216, seeking the replacement of three supposedly faulty pieces of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, two Cisco Model WS-C3750X-48PF-S units and one Cisco Model WS-C3750X-24U-E.

7.     On or about December 13, 2016, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to San Diego, California, three pieces of Cisco computer hardware, namely, two new Cisco Model WS-C3750X-48PF-S units, serial numbers FDO2041F0N3 and FDO2041F1F7, respectively, each with a retail value of approximately $16,100, and one refurbished Cisco Model WS-C3750X-24U-E, serial number FDO1808R0WZ, with a retail value of approximately $8,340, via FedEx, in response to Cisco SR # 681458216.

8.     On or about December 14, 2016, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 5351 the following items, among others, which were obtained from Cisco through the submission of false warranty claims: (a) the one new Cisco Model WS-C3850-48F-L, serial number FCW2043C1PJ, shipped to co-conspirator Williams by Cisco in response to SR #s 681447437; (b) the one refurbished Cisco Model WS-C3850-48P-L, serial number FOC1949X1PM, shipped to co-conspirator Williams by Cisco in response to S.R. # 681444624; (c) the one new Cisco Model WS-C3650-48FD-S, serial number FDO2042E0J6, and one refurbished Cisco Model WS-C3650-48FS-S, serial number

FDO1919E4C2, shipped to co-conspirator Williams by Cisco in response to SR # 681444396; and (d) the two Cisco Model WS-C3750X-48PF-S units, serial numbers FDO2041F0N3 and FDO2041F1F7, respectively, and the one Cisco Model WS-C3750X-24U-E, serial number FDO1808R0WZ, that Cisco had shipped to co-conspirator Williams in response to Cisco SR # 681458216.

9. On or about December 20, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "GMX" of Springfield, Pennsylvania, and using the false name of "Leon Dixon" and the email address of "setupdesign@gmx.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681496973, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely a Cisco Model WS-C3750X-48PF-S.

10. On or about December 20, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "GMX" of Springfield, Pennsylvania, and using the false name of "Leon Dixon" and the email address of "setupdesign@gmx.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681492168, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-48PW-SZ.

11. On or about December 21, 2016, co-conspirator Jerel Andre Williams, posing as a representative of the company "GMX" of Springfield, Pennsylvania, and using the false name of "Leon Dixon" and the email address of "setupdesign@gmx.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681502880, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C2960X-48LPD-L.

11

12. On or about December 20, 2016, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to a FedEx store in Wynnewood, Pennsylvania, one new Cisco Model WS-C3750X-48PF-S, serial number FDO2041F0JQ, with a retail value of approximately $16,100, and one refurbished Cisco Model WS-C3850-48PW-SZ, serial number FOC1833X102, with a retail value of approximately $8,700, via FedEx, in response to Cisco SR #s 681496973 and 681492168, respectively.

13. On or about December 22, 2016, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to a FedEx store in Wynnewood, Pennsylvania, one refurbished Cisco Model WS-C2960X-48LPD-L, serial number FOC1951S3ZN, with a retail value of approximately $4,197, via FedEx, in response to Cisco SR # 681502880.

14. On or about December 23, 2016, at a FedEx store in Wynnewood, Pennsylvania, co-conspirator Jerel Andre Williams, posing as "Leon Dixon," picked up three pieces of Cisco hardware, serial numbers FDO2041F0JQ, FOC1833X102, and FOC1951S3ZN, shipped by Cisco in response to Cisco SR #s 681496973, 681492168, and 681502880, respectively.

15. On or about December 23, 2016, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 5374 the three pieces of Cisco hardware, serial numbers FDO2041F0JQ, FOC1833X102, and FOC1951S3ZN, that had been shipped by Cisco to co-conspirator Williams in response to the false warranty claims reflected in Cisco SR #s 681496973, 681492168, and 681502880, respectively.

16. On or about February 21, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Swift Phones" of Monroe, Louisiana, and using the false name of "Kimberly Johnson" and the email address of

12

"swiftphones@protonmail.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681839660, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3850-48U-L.

17.      On or about February 21, 2017, defendant TAKANDRYIA LATRICE CAGE caused Cisco to ship from Roanoke, Texas, to a FedEx store in Monroe, Louisiana, a refurbished Cisco Model WS-C3850-48U-L, serial number FCW2014D05W, with a retail value of approximately $6,980, via FedEx, in response to Cisco SR # 681839660.

18.      On or about March 7, 2017, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 5572 the Cisco Model WS-C3850-48U-L, serial number FCW2014D05W, that was provided by Cisco and shipped to defendant TAKANDRYIA LATRICE CAGE in response to the false warranty claim SR # 681839660.

19.      On or about March 19, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Sunset Data Network" of Allen, Texas, and using the false name of "Jerica Stephens" and the email address of "sunsetdatallc@aol.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681994127, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3750X-24S-S.

20.      On or about March 20, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Sunset Data Network" of Allen, Texas, and using the false name of "Jerica Stephens" and the email address of "sunsetdatallc@aol.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681995209, seeking the

replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3750X-24S-S.

21.     On or about March 20, 2017, defendant TAKANDRYIA LATRICE CAGE caused Cisco to ship from Roanoke, Texas, to a FedEx store in Allen, Texas, two new Cisco Model WS-C3750X-24S-S units, serial numbers FDO2034F0FF and FDO2034F0EU, respectively, each with a retail value of approximately $23,000, via FedEx, in response to Cisco SR #s 681995209 and 681994127, respectively.

22.     On or about March 20, 2017, co-conspirator Jerel Andre Williams, posing as a representative of the company "Pivotal Systems" of White Settlement, Texas, and using the false name of "Alexander Smith" and the email address of "pvtsystems@outlook.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 681999650, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-24S-S.

23.     On or about March 20, 2017, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to Ft. Worth, Texas, a new Cisco Model WS-C3850-24S-S, serial number FOC2037U1DE, with a retail value of approximately $12,000, via FedEx, in response to Cisco SR #s 681999650.

24.     On or about March  20, 2017, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 5609 the following items, which were obtained from Cisco through the submission of false warranty claims : (a) the two Cisco Model WS-C3750X-24S-S units, serial numbers FDO2034F0FF and FDO2034F0EU, respectively, that Cisco had shipped to defendant TAKANDRYIA LATRICE CAGE in response to Cisco SR #s 681995209 and 681994127, respectively; and (b) the Cisco Model WS-C3850-24S-S, serial

14

number FOC2037U1DE, that Cisco had shipped to co-conspirator Williams in response to Cisco SR #s 681999650.

25.   On or about March 29, 2017, co-conspirator Jerel Andre Williams arranged to sell to Gulfstream Data two Cisco Model WS-C3850-48P-E units that he did not then own or possess and was issued P.O. # 5647, intending to thereafter work with defendant TAKANDRYIA LATRICE CAGE to submit false warranty claims to Cisco in order to receive those units and then to ship them to Gulfstream Data.

26.   On or about March 30, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Green Networking" of Las Vegas, Nevada, and using the false name of "Jennifer Lovett" and the email address of "love.networks@zoho.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 682067447, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3850-48P-E.

27.   On or about March 31, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Green Networking" of Las Vegas, Nevada, and using the false name of "Jennifer Lovett" and the email address of "love.networks@zoho.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 682074464, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3850-48P-E.

28.   On or about March 31, 2017, defendant TAKANDRYIA LATRICE CAGE caused Cisco to ship from Roanoke, Texas, to a FedEx store in Las Vegas, Nevada, one

new Cisco Model WS-C3850-48P-E, serial number FOC2103X05C, with a retail value of approximately $21,000, and one refurbished Cisco Model WS-C3850-48P-E, serial number FOC1936U1T0, with a retail value of approximately $12,600, via FedEx, in response to Cisco SR #s 682067447 and 682074464, respectively.

29.    On or about April 2, 2017, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 5647 the two Cisco Model WS-C3850-48P-E, serial numbers FOC2103X05C and FOC1936U1T0, that were provided by Cisco and shipped to defendant TAKANDRYIA LATRICE CAGE in response to the false warranty claims SR #s 682067447 and 682074464, respectively.

30.    On or about June 2, 2017, co-conspirator Jerel Andre Williams arranged to sell to Gulfstream Data one Cisco Model WS-C3850-48F-E unit and one Cisco Model WS-C3850-48U-S that he did not then own or possess and was issued P.O. # 5810, intending to thereafter work with defendant TAKANDRYIA LATRICE CAGE to submit false warranty claims to Cisco in order to receive those units and then to ship them to Gulfstream Data.

31.    On or about June 2, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Global Net Data" of San Antonio Texas, and using the false name of "Ciara Stevens" and the email address of "t.stevens@gndnow.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 682445714, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely a Cisco Model WS-C3850-48F-E.

32.    On or about June 2, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Global Net Data" of San Antonio Texas, and using the false name of "Ciara Stevens" and the email address of "t.stevens@gndnow.com," submitted

16

a false warranty claim to Cisco and was assigned Cisco SR # 682445686, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3850-48U-S.

33. On or about June 2, 2017, defendant TAKANDRYIA LATRICE CAGE caused Cisco to ship from Roanoke, Texas, to a FedEx store in San Antonio, Texas, one new Cisco Model WS-C3850-48F-E, serial number FOC2116U21P, with a retail value of approximately $22,000, and one refurbished Cisco Model WS-C3850-48U-S, serial number FOC2009U11T, with a retail value of approximately $8,400, via FedEx, in response to Cisco SR #s 682445714 and 682445686, respectively.

34. On or about June 5, 2017, at a FedEx store in San Antonio, Texas, defendant TAKANDRYIA LATRICE CAGE posing as "Ciara Stevens," picked up two pieces of Cisco hardware, serial numbers FOC2116U21P and FOC2009U11T, shipped by Cisco in response to Cisco SR #s 682445714 and 682445686, respectively.

35. On or after June 5, 2017, co-conspirator Jerel Andre Williams sold and provided the one new Cisco Model WS-C3850-48F-E, serial number FOC2116U21P, and the one refurbished Cisco Model WS-C3850-48U-S, serial number FOC2009U11T, that were provided by Cisco and shipped to defendant TAKANDRYIA LATRICE CAGE in response to Cisco SR #s 682445714 and 682445686, respectively, to Gulfstream Data to fulfill P.O. # 5810.

36. On or about August 22, 2017, defendant TAKANDRYIA LATRICE CAGE, posing as a representative of the company "Dreamworks Dental" of Arlington, Texas, and using the false name of "Samantha Bucks" and the email address of "sbucks0054@orthodontist.net" submitted a false warranty claim to Cisco and was assigned Cisco SR # 682925241, seeking the replacement of a supposedly faulty piece of Cisco computer

17

hardware that defendant CAGE falsely claimed to own, namely, a Cisco Model WS-C3650-48PD-L.

37.     On or about August 22, 2017, defendant TAKANDRYIA LATRICE CAGE caused Cisco to ship from Roanoke, Texas, to Arlington, Texas, a new Cisco Model WS-C3650-48PD-L, serial number FDO2125Q0V0, with a retail value of approximately $9,100, via FedEx, in response to Cisco SR # 682925241.

38.     On or about August 23, 2017, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 6011 the one new Cisco Model WS-C3650-48PD-L, serial number FDO2125Q0V0, that was provided by Cisco and shipped to defendant TAKANDRYIA LATRICE CAGE in response to Cisco SR # 682925241.

39.     On or about December 29, 2017, co-conspirator Jerel Andre Williams, posing as a representative of the company "North American Processing Solutions" of Dallas, Texas, and using the false name of "Larry Sander" and the email address of "larry_sander@aol.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 683692648, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-12XS-E.

40.     On or about December 29, 2018, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to a FedEx store in Dallas, Texas, a new Cisco Model WS-C3850-12XS-E, serial number FCW2145C0J0, with a retail value of approximately $16,280, via FedEx, in response to Cisco SR # 683692648.

41.     On or about January 3, 2018, co-conspirator Jerel Andre Williams, posing as a representative of the company "Fortress Computer Pros" of San Diego, California, and using

18

the false name of "Jeffery Gatson" and the email address of "fortresspro.usa.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 683707235, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-24XS-S.

42.     On or about January 3, 2018, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to a FedEx store in La Jolla, California, a new Cisco Model WS-C3850-24XS-S, serial number FCW2147C0JY, with a retail value of approximately $21,000, via FedEx, in response to Cisco SR # 683707235.

43.     On or about January 4, 2018, co-conspirator Jerel Andre Williams, posing as a representative of the company "Transparent VOIP" of San Diego, California, and using the false name of "Mark Williams" and the email address of "mark.voip@techie.com," submitted a false warranty claim to Cisco and was assigned Cisco SR # 683715027, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-12X48U-S.

44.     On or about January 5, 2018, co-conspirator Jerel Andre Williams caused Cisco to ship from Roanoke, Texas, to a FedEx store in San Diego, California, a refurbished Cisco Model WS-C3850-12X48U-S, serial number FCW2030C08R, with a retail value of approximately $9,366, via FedEx, in response to Cisco SR # 683715027.

45.     On or about January 7, 2018, at a FedEx store in La Jolla, California, co-conspirator Jerel Andre Williams, posing as "Jeffery Gatson," picked up one piece of Cisco hardware, serial number FCW2147C0JY, shipped by Cisco in response to Cisco SR # 683707235.

46.     On or about January 8, 2018, at a FedEx store in San Diego, California, co-conspirator Jerel Andre Williams, posing as "Mark Williams," picked up one piece of Cisco hardware, serial number FCW2030C08R, shipped by Cisco in response to Cisco SR # 683715027.

47.     On or about January 11, 2018, co-conspirator Andre Williams arranged to sell to Gulfstream Data a Cisco Model WS-C3850-24S-S that he did not then own or possess and was issued P.O. # 6265, intending to submit a false warranty claim to Cisco in order to receive that particular unit and then to ship it directly to Gulfstream Data.

48.     On or about January 12, 2018, co-schemer Jerel Andre Williams registered the domain name "alphateamcomp.org" and created a new email address, "mark@alphateamcomp.org."

49.     On or about January 15, 2018, co-schemer Jerel Andre Williams, posing as a representative of the company "Alpha Team Computer" of Dover, Delaware, and using the false name of "Mark Williams" and the email address of "mark@alphateamcomp.org," submitted a false warranty claim to Cisco and was assigned Cisco SR # 63774408, seeking the replacement of a supposedly faulty piece of Cisco computer hardware that co-conspirator Williams falsely claimed to own, namely, a Cisco Model WS-C3850-24S-S.

50.     On or about January 15, 2018, co-conspirator Jerel Andre Williams caused Cisco to ship from Columbus, Ohio, through Philadelphia, Pennsylvania to a FedEx store in Wilmington, Delaware, a refurbished Cisco Model WS-C3850-24S-S, serial number FCW2029F04B, with a retail value of approximately $12,240 via FedEx, in response to Cisco SR # 63774408.

51.     On or about January 17, 2018, at a FedEx store in Wilmington, Delaware, co-conspirator Jerel Andre Williams, posing as "Mark Williams," picked up one piece of Cisco hardware, serial number FCW2029F04B, shipped by Cisco in response to Cisco SR # 63774408.

52.     On or about January 17, 2018, co-conspirator Jerel Andre Williams sold and provided to Gulfstream Data to fulfill P.O. # 6265 the refurbished Cisco Model WS-C3850-24S-S, serial number FCW2029F04B, that was provided by Cisco and shipped to co-conspirator Williams in response to Cisco SR # 63774408.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times relevant to this Information:

1.      The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters.

2.      As part of its efforts, the SBA provided for business loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

3.      The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

4.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application (SBA Form 2483), the business, through its authorized representative, had to state its average monthly payroll expenses and number of employees. In addition, businesses had to provide documentation showing their payroll expenses, as part of the PPP loan application

process. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5.      Once a qualifying business completed a PPP application, a participating lender, or agent on behalf of the participating lender, processed the application. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees.

6.      Proceeds from a PPP loan were legally required to be used only for certain permissible business expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness, if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

7.      Cross River Bank was a financial institution headquartered in Fort Lee, New Jersey with deposits insured by the Federal Deposit Insurance Corporation ("FDIC") under FDIC certificate number 58410. Cross River Bank participated as a lender in the PPP.

8.      BlueVine, Capital, Inc. ("BlueVine") was a financial technology company headquartered in Redwood City, California. Among other things, BlueVine provided intake and review services on behalf of Cross River Bank in connection with PPP loan applications submitted to Cross River Bank.

9.      Revenued was a small business financing company based in Jersey City, New Jersey. Revenued's technology platform included software to manage loan applications, processing and underwriting for lenders participating in the PPP. Among other things, Revenued

provided intake and review services on behalf of Cross River Bank in connection with PPP loan applications submitted to Cross River Bank.

10.    Defendant TAKANDRYIA LATRICE CAGE was a resident of the Northern District of Texas.

11.    Defendant TAKANDRYIA LATRICE CAGE operated a business "Glamour By Kandy," which generated 2019 revenues of approximately $4,965 and 2019 net profits of approximately $3,960.

12.    Neighborhood Credit Union ("NCU") was a financial institution chartered by the National Credit Union Administration, charter number 68177, whose deposits were insured by the National Credit Union Share Insurance Fund.

13.    Defendant TAKANDRYIA LATRICE CAGE maintained an account ending in 1129 at an NCU branch in the Northern District of Texas.

14.    Wells Fargo Bank was a financial institution the deposits of which were insured by the FDIC under FDIC certificate number 3511.

15.    Defendant TAKANDRYIA LATRICE CAGE maintained an account ending in 2084 in the name "The Luxury Cage L.C." at a Wells Fargo Bank branch in the Northern District of Texas.

16.    Regions Bank was a financial institution the deposits of which were insured by the FDIC under FDIC certificate number 12368.

17.    Defendant TAKANDRYIA LATRICE CAGE maintained an account ending in 9197 at a Regions Bank branch in the Northern District of Texas.

**THE SCHEME**

18.     From in or about June 2020, through in or about June 2021, in the District of New Jersey, the Northern District of Texas, and elsewhere, defendant

**TAKANDRYIA LATRICE CAGE**

knowingly executed and attempted to execute a scheme and artifice to defraud Cross River Bank and to obtain money and property under the care, custody and control of Cross River Bank, by means of materially false and fraudulent pretenses, representations, and promises.

19.     The purpose of the scheme was for defendant TAKANDRYIA LATRICE CAGE to enrich herself by fraudulently obtaining PPP loan proceeds, including by making false statements regarding businesses defendant CAGE purported to own and operate, including false statements about the number of employees, the wages paid, the payroll taxes paid, and the intended use of the PPP loan proceeds. Once she obtained those PPP loan proceeds, defendant CAGE caused those funds to be spent on unauthorized purchases.

**MANNER AND MEANS**

It was part of the scheme that:

20.     On or about June 29, 2020, defendant TAKANDRYIA LATRICE CAGE caused a false and misleading PPP loan application in her own name doing business as Glamour By Kandy, to be submitted to Cross River Bank, through Blue Vine, seeking approximately $5,366 in PPP funds ("the First Cross River PPP Loan" application). The First Cross River PPP Loan application contained purported payroll data that, if true and accurate, would have supported the loan request. Defendant CAGE signed the First Cross River PPP Loan application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

21.    The information that defendant TAKANDRYIA LATRICE CAGE caused to be submitted with the First Cross River PPP Loan application falsely represented the number of employees of Glamour By Kandy, the wages paid to Glamour by Kandy employees, the 2019 revenue and net profits of Glamour By Kandy, and the intended uses of the PPP loan proceeds. Defendant CAGE included with the First Cross River PPP Loan application a false 2019 Schedule C that falsely represented that Glamour By Kandy had 2019 revenue of approximately $26,760 and a 2019 net profit of approximately $25,755.

22.    In the First Cross River PPP Loan application, defendant TAKANDRYIA LATRICE CAGE falsely certified that the PPP loan proceeds "[would] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Defendant CAGE further certified that she understood that "if the funds [were] knowingly used for unauthorized purposes, the federal government may hold [her] legally liable, such as for charges of fraud." Likewise, she affirmed that the information provided "in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and further affirmed that knowingly making a false statement to obtain a PPP loan could result in imprisonment, or fines, or both.

23.    On or about June 30, 2020, based on the false information, representations, and documentation submitted in and in connection with the First Cross River PPP Loan application, defendant TAKANDRYIA LATRICE CAGE caused Cross River Bank to approve the First Cross River PPP Loan application and transfer approximately $5,366 via wire from Fort Lee, New Jersey to the defendant TAKANDRYIA LATRICE CAGE'S account at NCU ending in 1129 in the Northern District of Texas.

26

24. Defendant TAKANDRYIA LATRICE CAGE caused proceeds from the First Cross River PPP Loan that had been deposited into her NCU account ending in 1129 to be used for personal and unauthorized expenses.

25. On or about February 18, 2021, defendant TAKANDRYIA LATRICE CAGE caused a second false and misleading PPP loan application in her own name doing business as "The Luxury Cage" to be submitted to Cross River Bank through Revenued, seeking approximately $21,250 in PPP funds (the "Second Cross River PPP Loan" application). The Second Cross River PPP Loan application contained purported payroll data that, if true and accurate, would have supported the loan request. Defendant CAGE signed the Second Cross River PPP Loan application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

26. The information that defendant TAKANDRYIA LATRICE CAGE caused to be submitted with the Second Cross River PPP Loan application falsely represented the number of employees of "The Luxury Cage," the wages paid to "The Luxury Cage" employees, the 2019 revenue and net profits of "The Luxury Cage," and the intended uses of the PPP loan proceeds. Defendant CAGE included with the Second Cross River PPP Loan application a false 2019 Schedule C that falsely represented that "The Luxury Cage" had 2019 revenue of approximately $106,780 and a 2019 net profit of approximately $99,894.

27. In the Second Cross River PPP Loan application, defendant TAKANDRYIA LATRICE CAGE falsely certified that the PPP loan proceeds "[would] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Defendant CAGE further certified that she understood that "if the funds [were] knowingly used for unauthorized

purposes, the federal government may hold [her] legally liable, such as for charges of fraud." Likewise, she affirmed that the information provided "in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and further affirmed that knowingly making a false statement to obtain a PPP loan could result in imprisonment, or fines, or both.

28. On or about March 1, 2021, based on the false information, representations, and documentation submitted in and in connection with the Second Cross River PPP Loan application, defendant TAKANDRYIA LATRICE CAGE caused Cross River Bank to approve the Second Cross River PPP Loan application and transfer approximately $21,250 via wire from Fort Lee, New Jersey to the defendant TAKANDRYIA LATRICE CAGE's account at Wells Fargo Bank ending in 2084 in the Northern District of Texas.

29. Defendant TAKANDRYIA LATRICE CAGE caused proceeds from the Second Cross River PPP Loan that had been deposited into her Wells Fargo Bank account ending in 2084 to be used for personal and unauthorized expenses.

30. On or about February 22, 2021, defendant TAKANDRYIA LATRICE CAGE caused a third false and misleading PPP loan application in her own name to be submitted to Cross River Bank through Blue Vine, seeking approximately $12,285 in PPP funds (the "Third Cross River PPP Loan" application). The Third Cross River PPP Loan application contained purported payroll data that, if true and accurate, would have supported the loan request. Defendant CAGE signed the Third Cross River PPP Loan application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

31.     The information that defendant TAKANDRYIA LATRICE CAGE caused to be submitted with the Third Cross River PPP Loan application falsely represented the number of employees of Glamour By Kandy, the wages paid to the Glamour By Kandy employees, the 2020 revenue and net profits of Glamour By Kandy, and the intended uses of the PPP loan proceeds. Defendant CAGE included with the Third Cross River PPP Loan application a false 2020 Schedule C that falsely represented that Glamour By Kandy had 2020 revenue of approximately $64,928 and a 2020 net profit of approximately $58,979.

32.     On or about March 8, 2021, based on the false information, representations, and documentation submitted in and in connection with the Third Cross River PPP Loan application, defendant TAKANDRYIA LATRICE CAGE caused Cross River Bank to approve the Third Cross River PPP Loan application and transfer approximately $12,285 via wire from Fort Lee, New Jersey to the defendant TAKANDRYIA LATRICE CAGE'S account at Regions Bank ending in 9197 in the Northern District of Texas.

33.     Defendant TAKANDRYIA LATRICE CAGE caused proceeds from the Third Cross River PPP Loan that had been deposited into her Regions Bank account ending in 9197 to be used for personal and unauthorized expenses.

All in violation of Title 18, United States Code, Section 1344.

29

## COUNTS THREE THROUGH FIVE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

At all times relevant to this Information:

1.      Paragraphs 1 through 6 and 10 through 17 of Count Two are incorporated here.

2.      American Lending Center, LLC ("American Lending") was a private lending company headquartered in Long Beach, California. American Lending provided commercial loans to eligible small businesses nationwide primarily through SBA programs. American Lending participated as a lender in the PPP.

3.      MBE Capital Partners, LLC ("MBE Capital") was a private lending company institution headquartered in Fort Lee, New Jersey that provided private commercial loans and funding. MBE participated as a lender in the PPP.

## THE SCHEME

4.      From in or about August 2020, through in or about June 2021, in the District of New Jersey, the Central District of California, the Northern District of Texas, and elsewhere, defendant

### TAKANDRYIA LATRICE CAGE

devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

5.      The purpose of the scheme was for defendant TAKANDRYIA LATRICE CAGE to enrich herself by fraudulently obtaining PPP loan proceeds, including by making false statements regarding businesses defendant CAGE purported to own and operate, including false statements about the number of employees, the wages paid, the payroll taxes paid, and the

intended use of the PPP loan proceeds. Once she obtained those PPP loan proceeds, defendant

CAGE caused those funds to be spent on unauthorized purchases

**MANNER AND MEANS**

It was part of the scheme that:

6.      On or about August 6, 2020, defendant TAKANDRYIA LATRICE CAGE

caused a false and misleading PPP loan application in her own name to be submitted to MBE

seeking approximately $20,833 in PPP funds ("the First MBE PPP Loan" application). The First

MBE PPP Loan application contained purported payroll data that, if true and accurate, would

have supported the loan request. Defendant CAGE signed the First MBE PPP Loan application

and falsely certified that both the application and the information provided in the supporting

documents were true and accurate.

7.      The information that defendant TAKANDRYIA LATRICE CAGE caused

to be submitted with the First MBE PPP Loan application falsely represented the number of

defendant CAGE's employees, the wages paid to those employees, the 2019 revenue and net

profits of defendant CAGE, and the intended uses of the PPP loan proceeds. Defendant CAGE

included with the First MBE PPP Loan application a false 2019 Schedule C that falsely

represented that defendant CAGE had 2019 revenue of approximately $106,780 and a 2019 net

profit of approximately $99,894.

8.      In the First MBE PPP Loan application, defendant TAKANDRYIA

LATRICE CAGE falsely certified that the PPP loan proceeds "[would] be used to retain workers

and maintain payroll or make mortgage interest payments, lease payments, and utility payments,

as specified under the Paycheck Protection Program Rule." Defendant CAGE further certified

that she understood that "if the funds [were] knowingly used for unauthorized purposes, the

federal government may hold [her] legally liable, such as for charges of fraud." Likewise, she affirmed that the information provided "in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and further affirmed that knowingly making a false statement to obtain a PPP loan could result in imprisonment, or fines, or both.

9.      On or about August 26, 2020, based on the false information, representations, and documentation submitted in and in connection with the First MBE PPP Loan application, defendant TAKANDRYIA LATRICE CAGE caused MBE to approve the First MBE PPP Loan application and transfer approximately $20,833 via wire from Fort Lee, New Jersey to the defendant TAKANDRYIA LATRICE CAGE'S account at NCU ending in 1129 in the Northern District of Texas.

10.      Defendant TAKANDRYIA LATRICE CAGE caused proceeds from the First MBE PPP Loan that had been deposited into her NCU account ending in 1129 to be used for personal and unauthorized expenses.

11.      On or about January 19, 2021, defendant TAKANDRYIA LATRICE CAGE caused a false and misleading PPP loan application in her own name to be submitted to MBE seeking approximately $20,800 in PPP funds ("the Second MBE PPP Loan" application). The Second MBE PPP Loan application contained purported payroll data that, if true and accurate, would have supported the loan request. Defendant CAGE signed the Second MBE PPP Loan application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

12.      The information that defendant TAKANDRYIA LATRICE CAGE caused to be submitted with the Second MBE PPP Loan application falsely represented the number of

defendant CAGE's employees, the wages paid to those employees, the 2019 and 2020 revenue and net profits of defendant CAGE, and the intended uses of the PPP loan proceeds.

13.     In the Second MBE PPP Loan application, defendant TAKANDRYIA LATRICE CAGE falsely certified that the PPP loan proceeds "[would] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Defendant CAGE further certified that she understood that "if the funds [were] knowingly used for unauthorized purposes, the federal government may hold [her] legally liable, such as for charges of fraud." Likewise, she affirmed that the information provided "in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and further affirmed that knowingly making a false statement to obtain a PPP loan could result in imprisonment, or fines, or both.

14.     On or about February 11, 2021, based on the false information, representations, and documentation submitted in and in connection with the Second MBE PPP Loan application, defendant TAKANDRYIA LATRICE CAGE caused MBE to approve the Second MBE PPP Loan application and transfer approximately $20,800 via wire from Fort Lee, New Jersey to the defendant TAKANDRYIA LATRICE CAGE'S account at NCU ending in 1129 in the Northern District of Texas.

15.     Defendant TAKANDRYIA LATRICE CAGE caused proceeds from the Second MBE PPP Loan that had been deposited into her NCU account ending in 1129 to be used for personal and unauthorized expenses.

16.     On or about April 20, 2021, defendant TAKANDRYIA LATRICE CAGE caused a false and misleading PPP loan application in her own name doing business as "The

33

Luxury Cage" to be submitted to American Lending  seeking approximately $20,833 in PPP funds ("the American Lending PPP Loan" application). The American Lending PPP Loan application contained purported payroll data that, if true and accurate, would have supported the loan request. Defendant CAGE signed the American Lending PPP Loan application and falsely certified that both the application and the information provided in the supporting documents were true and accurate.

17.    The information that defendant TAKANDRYIA LATRICE CAGE caused to be submitted with the American Lending PPP Loan application falsely represented the number of "The Luxury Cage" employees, the wages paid to those employees, the 2019 revenue and net profits of defendant CAGE, and the intended uses of the PPP loan proceeds. Defendant CAGE included with the American Lending PPP Loan application a false 2019 Schedule C that falsely represented that defendant CAGE had 2019 revenue of approximately $106,780 and a 2019 net profit of approximately $99,894.

18.    In the American Lending PPP Loan application, defendant TAKANDRYIA LATRICE CAGE falsely certified that the PPP loan proceeds "[would] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Defendant CAGE further certified that she understood that "if the funds [were] knowingly used for unauthorized purposes, the federal government may hold [her] legally liable, such as for charges of fraud." Likewise, she affirmed that the information provided "in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and further affirmed that knowingly making a false statement to obtain a PPP loan could result in imprisonment, or fines, or both.

34

19.     On or about May 4, 2021, based on the false information, representations, and documentation submitted in and in connection with the American Lending PPP Loan application, defendant TAKANDRYIA LATRICE CAGE caused American Lending to approve the American Lending PPP Loan application and transfer approximately $20,833 via wire from Long Beach, California, to defendant TAKANDRYIA LATRICE CAGE'S account at Wells Fargo Bank ending in 2084 in the Northern District of Texas.

20.     Defendant TAKANDRYIA LATRICE CAGE caused proceeds from the American Lending PPP Loan that had been deposited into her Wells Fargo Bank account ending in 2084 to be used for personal and unauthorized expenses.

## WIRE FRAUD

21.     On or about each of the following dates, in the District of New Jersey, the Central District of California, the Northern District of Texas, and elsewhere, defendant

**TAKANDRYIA LATRICE CAGE,**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each transmission constituting a separate count:

| COUNT | DATE | ORIGINATION OF WIRE | DESTINATION OF WIRE | METHOD AND DESCRIPTION OF WIRE |
|-------|------|---------------------|---------------------|--------------------------------|
| THREE | August 6, 2020 | Northern District of Texas | District of New Jersey | First MBE PPP Loan Application submitted by defendant CAGE via the internet, seeking approximately $20,833 PPP loan |

| COUNT | DATE | ORIGINATION OF WIRE | DESTINATION OF WIRE | METHOD AND DESCRIPTION OF WIRE |
|---|---|---|---|---|
| FOUR | January 19, 2021 | Northern District of Texas | District of New Jersey | Second MBE PPP Loan Application submitted by defendant CAGE via the internet, seeking approximately $20,800 PPP loan |
| FIVE | April 20, 2021 | Northern District of Texas | Central District of California | American Lending PPP Loan Application submitted by defendant CAGE via the internet, seeking approximately $20,833 PPP loan |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.    As a result of the violations of Title 18, United States Code, Sections 1349, 1344, and 1343, set forth in this Indictment, defendant

### TAKANDRYIA LATRICE CAGE

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly from the commission of such offenses, including but not limited to $139,704 in United States currency (money judgment).

2.    If any of the property described above, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred to, sold to, or deposited with a third party;

      c.    has been placed beyond the jurisdiction of this Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 928(b) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(2).

_Ronald A Barack_ for

**JENNIFER ARBITTIER WILLIAMS**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

## THE UNITED STATES OF AMERICA

vs.

## TAKANDRYIA LATRICE CAGE

INFORMATION

Counts
18 U.S.C. § 1349 (conspiracy to commit mail fraud – 1 count); 18 U.S.C. § 1344 (bank fraud – 1 count);
18 U.S.C. § 1343 (wire fraud – 3 counts); Notice of forfeiture

A true bill.

_____
Foreman

Filed in open court this _____day,
Of _____A.D. 20_____
_____
Clerk

Bail, $_____